*630 WILLIAMS, Senior Circuit Judge,
dissenting in part:
California can adopt a regulation of the sort at issue here only if the federal Environmental Protection Agency authorizes it. See 42 U.S.C. § 7543(e)(2)(A). EPA, in turn, can authorize such a regulation only if it meets § 7543(e)(2)(A)(iii)’s requirement that the rule be “consistent with” § 7543 as a whole, including, of course, § 7543(e)(2)(B). Subsection (B) provides that other states may — or may not— “adopt and enforce” the California regulation as their own. Petitioner American Trucking Associations argued to the agency that California’s rule on “transportation refrigeration units” (“TRUs”) isn’t “consistent with” subsection (B)’s “adopt and enforce” option because it amounts to a de facto national standard. While nominally directed only at vehicles or engines (of the relevant type) that enter California, ATA claimed, the regulation would have the practical effect of requiring the vast majority of such machines to comply with California’s law, and so would effectively vitiate other states’ prerogative to choose whether to embrace it themselves.
A logical EPA response to ATA’s claim would involve a number of steps. First, it would address the threshold question whether subsection (A)(iii), coupled with subsection (B), actually proscribes EPA approval of California rules that amount to de facto national standards. Whatever the agency’s answer, it would normally be expected to explain its statutory interpretation. See SEC v. Chenery Corp., 332 U.S. 194, 196-97, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947) (“It will not do for a court to be compelled to guess at the theory underlying the agency’s action.”). If it exercised its interpretative authority to find no such proscription, that of course would be the end of the analysis (subject to judicial review). But if it found such a proscription, the second step would be to identify some principle by which to distinguish impermissible de facto national standards from permissible California rules with marginal spillover effects on other states. Finally, having identified such a principle, EPA would then need to apply that principle to ATA’s assertions, resolving factual disputes to the extent necessary.
In fact, EPA conducted not a single step of the necessary analysis. It did not even address the threshold question, let alone explain its answer. While the agency acknowledges on appeal that subsection (A)(iii)’s “consistent with this section” criterion requires consistency with subsection (B)’s requirement of preserving other states’ options (whatever the implications of the requirement may be), see Appellants’ Br. at 34-35, its decision document includes nothing resembling a similar recognition.
The passage the majority reproduces addresses arguments completely different from ATA’s. It explains that the TRU rules do not “apply” outside California and that the California authorities do not claim authority to enforce them outside California or to force other state authorities to do so. See Maj. Op. at 628-29 (quoting EPA’s discussion). Thus it refutes claims that, as far as I know, have never been made by anyone in the years during which this matter was pending before various agencies.
The closest the EPA comes to considering ATA’s argument is in the concluding passage, where it merely says that nothing in the statute confines California to regulation of “engines that operate solely or even a majority of their time in California.” Id. Really? By this language, it would be perfectly all right for the California rule to say that no vehicle may enter California if any other vehicles, anywhere in the United States and owned by the same firm, were noncompliant with the California standard.
*631 In short, EPA’s discussion here is a paradigmatic instance of an agency’s failure to “examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.” See Motor Vehicle Manufacturers Ass’n v. State Farm Mutual Automobile Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (internal quotation marks omitted). Standard principles require us to remand the case to the agency for the exercise of reasoned decisionmaking. Allentown Mack Sales & Service, Inc. v. NLRB, 522 U.S. 359, 374, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998) (“The Administrative Procedure Act, which governs the proceedings of administrative agencies and related judicial review, establishes a scheme of ‘reasoned decisionmaking.’ Not only must an agency’s decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational. Courts enforce this principle with regularity!)]” (quoting State Farm, 463 U.S. at 52, 103 S.Ct. 2856)).